[Civ. No. 24156.   Second Dist., Div. Two.   Feb. 24, 1960.]

SEARS, ROEBUCK AND COMPANY (a Corporation), Appellant, v. GLENN V. WALLS et al., Respondents.

Wheeler, McCue & Morris and Theodore G. Morris for Appellant.

Stanley Mosk, Attorney General, B. Abbott Goldberg, Assistant Attorney General, and Vincent P. Lafferty, Deputy Attorney General, for Respondents.

ASHBURN, J.—Appeal from judgment denying peremptory writ of mandate under section 1094.5, Code of Civil Procedure. Petitioner sought reversal or annulment of decision of the California Unemployment Insurance Appeals Board which held that the Sears, Roebuck and Company voluntary plan of unemployment compensation disability benefits (established pursuant to § 3251 et seq. of Unempl. Ins. Code Ann.) shall reimburse the state's Unemployment Compensation Disability Fund (per § 2712 of said code) the amount of benefits paid by it to Sears' former employee Grace V. Myers. The petition for mandate included a transcript of the proceedings before the department's referee to whom an appeal had been taken (Unempl. Ins. Code Ann. §§ 404, 1328). His ruling was affirmed by the Appeals Board. Respondents appeared herein by way of demurrer and answer. The minutes show: "Counsel for both sides agree that the entire administrative record is before the Court in the petition and that neither has any additional evidence to offer and every question which could be raised herein arose in the consideration of the demurrer.

The demurrer is sustained without leave to amend. Peremptory Writ of Mandate denied.'' No findings were made and the judgment merely discharges an alternative writ and denies a peremptory; the language ''and decreed that the Demurrer of the respondents be and the same is sustained without leave to amend'' is stricken from the judgment and the change bears the judge's initials.

Grace V. Myers was a saleslady in the corset department of Sears, and was covered by its voluntary plan, which under the law must provide greater benefits than those provided by the statute (Unempl. Ins. Code Ann., § 3254, subd. (a)). She was discharged on December 30, 1957, because of a reduction in the force. The voluntary plan provides: ''Any employee while covered under this plan who becomes disabled by any physical or mental illness or injury, except as hereinafter excluded, *so as to prevent him from performing his regular or customary work,* shall be paid benefits for each period of such disability by this plan. . . .'' (Emphasis added.)[1] The statute (§ 2626) likewise says: '' 'Disability' or 'disabled' includes both mental or physical illness and mental or physical injury. An individual shall be deemed disabled in any day in which, because of his physical or mental condition, he is unable to perform his regular or customary work.'' Mrs. Myers understood that her discharge was due to reduction in payroll, she thought she was getting a bad deal and requested a leave of absence ''for them to reconsider not letting me go——''; also sought placement in another Sears store, took a test at the Department of Employment as to her qualifications for another job, visited Dr. Shear for the first time on January 7, 1958, did not tell him when she became disabled and in her claim bearing that date answered ''No'' to the question ''Did you leave your work because of your present sickness or injury.'' The claim was supported by a physician's certificate as required by section 2708, Unemployment Insurance Code, which says: ''The certificate shall contain a statement of the medical facts within his knowledge, his conclusion with respect to the disability of the claimant and his opinion with respect to probable duration of the disability.'' The doctor certified that her trouble was ''extreme nervous state'' and that ''disability extended from 12/29/57 to and including still disabled,'' and he forecast seeing her at weekly intervals until

---

[1]Payment of vacation or severance pay did not extend coverage of the voluntary plan beyond actual termination of employment. See *Sears, Roebuck & Co.* v. *Stewart,* 162 Cal.App.2d 793 [329 P.2d 47].

March, 1958. This placed the origin of the claim at two days before she ceased to work for Sears. The crucial issue was whether Mrs. Myers' disability existed while she was still an employee of Sears. In effect the trial judge affirmed a departmental finding that it did.

In considering appellant's claims it will be well to remember that this is a controversy between Sears and the Disability Fund and that Mrs. Myers' rights are not involved; she has been paid in full.

We have concluded that the judgment must be reversed upon two independent grounds.

Appellant contends that the court committed reversible error in failing to make findings; that this is a case in which it was obligated to weigh the evidence and hence findings are essential, citing *Davis* v. *State Board of Optometry*, 35 Cal. App.2d 428 [95 P.2d 959]; *Beloin* v. *Blankenhorn*, 97 Cal. App.2d 662, 664 [218 P.2d 552]. ▮ Apparently this is a case for weighing the evidence in the superior court, for the Department of Employment and the Unemployment Insurance Appeals Board are statewide administrative agencies created by statute (see Unemp. Ins. Code, §§ 301, 401), having no constitutionally conferred adjudicatory powers, and their decisions are subject to independent weighing of the supporting evidence by the trial judge when challenged under § 1094.5, Code of Civil Procedure. (See 49 Cal.Jur.2d, § 38, p. 413; *Thomas* v. *California Emp. Stab. Com.*, 39 Cal.2d 501, 504 [247 P.2d 561]; *Ashdown* v. *State of Calif. Dept. of Emp.*, 135 Cal.App.2d 291, 299 [287 P.2d 176].)

▮ Section 1094.5 does not touch the matter of appearance by demurrer and it may be assumed that that is proper, as in other mandamus proceedings. But in a case where 1094.5 requires an independent review of the evidence and it is incorporated in the petition, as here, the procedural device cannot control the court's action or dispense with its weighing the evidence; a demurrer to the petition does not present law points exclusively as it does in the ordinary civil action.

▮ The record at bar affirmatively states that counsel "for both sides agree that the entire administrative record is before the Court in the petition and that neither has any additional evidence to offer and every question which could be raised herein arose in the consideration of the demurrer." The judgment plainly discloses that the court did not base its ruling only upon the effect of a demurrer, but rested it upon the merits, and failed to make the specific findings which the

law required of him, as held in the Davis and Beloin cases, *supra*. That was most serious error in this case for it is difficult to believe that the learned trial judge would have arrived at the same finding as the department had he directed his mind to the specific question whether Mrs. Myers was "disabled" on the 29th and 30th of December, 1957. We hold that the failure to make findings requires reversal.

Appellant asserts there is no competent evidence to support the board's finding that Mrs. Myers became disabled prior to her discharge on December 30, 1957. To entitle him to benefits the claimant must be an employee who is disabled to such extent "as to prevent him from performing his regular or customary work." The department found that Mrs. Myers became disabled on December 29. But she worked all of that day and the next, being terminated on the 30th. The primary basis of the finding seems to be the certificate of Dr. Shear.

Appellant relies upon the settled proposition that an expert's opinion is no better than the reasons given for it (*Long Beach City H. S. Dist.* v. *Stewart*, 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249]; *Paxton* v. *County of Alameda*, 119 Cal.App.2d 393, 406 [259 P.2d 934]; *Owings* v. *Industrial Acc. Com.*, 31 Cal.2d 689, 692 [192 P.2d 1]; *West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711, 716 [180 P.2d 972]; *United States Fid. & Guar. Co.* v. *Industrial Acc. Com.*, 95 Cal.App. 186, 190 [272 P. 589]), and that the doctor's assumption of facts contrary to the proof destroys the opinion. (*Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351, 354-355 [2 P.2d 142]; *Guardianship of Waite*, 14 Cal.2d 727, 731 [97 P.2d 238]; *Burns* v. *Jackson*, 53 Cal.App. 345, 347 [200 P. 80]; *Barnett* v. *Atchison etc. Ry. Co.*, 99 Cal.App. 310, 317 [278 P. 443]; *Hendricks* v. *Industrial Acc. Com.*, 25 Cal.App.2d 534, 536 [78 P.2d 189]; *Estate of Powers*, 81 Cal.App.2d 480, 485-486 [184 P.2d 319]; *Brant* v. *Retirement Board*, 57 Cal.App.2d 721, 733 [135 P.2d 396]; *Bowers* v. *Olch*, 120 Cal.App.2d 108, 113-114 [260 P.2d 997]; *Waller* v. *Southern Calif. Gas Co.*, 170 Cal.App.2d 747, 752-756 [339 P.2d 577]; Witkin on California Evidence, § 484, p. 539.) In *Estate of Powers*, *supra*, it is said at page 485: "It is impossible for any expert basing his testimony solely upon other evidence introduced in the case thus to lift himself by his own bootstraps. If his opinion is not based upon facts otherwise proved, or assumes facts contrary to the only proof, it cannot rise to the dignity of substantial evidence." In *Brant*, *supra*, at pages 733 and 734:

"The rule is well settled in this state that, as against positive, uncontradicted factual evidence applicable to the particular case, particularly when given by attending physicians, opinions of experts as to probabilities or possibilities (particularly when partially based on erroneous assumptions) creates no conflict. . . . While it is true that an appellate court has no power to set aside findings of a judicial body vested with fact finding power when such findings are based on conflicting evidence, it is equally well settled that for that rule to apply the conflict must be substantial and real and not fanciful or fictitious."

Neither the statute nor the voluntary plan of appellant confers or attempts to confer any greater dignity or efficacy upon the doctor's certificate than the above cited cases recognize as inhering in it.

■■ The doctor did not see Mrs. Myers before January 7 and the following testimony given by her is pertinent: "REFEREE: When did your doctor say that he could consider you first disabled? CLAIMANT: After I went down to Unemployment I thought I would take a test to see what I could be situated in —I was nervous—I would try—REFEREE: You haven't answered my question. CLAIMANT: I thought you might understand my answer better—REFEREE: I am not interested in what you did after. CLAIMANT: January 7th when I went—to the doctor —— REFEREE: For this ——? CLAIMANT: Yes. REFEREE: But he stated you became disabled on December 29, 1957? CLAIMANT: I didn't tell him—I visited my eye doctor when my headaches became acute. Just two or three days before I had headaches all day and I took 9 to 12 aspirins to stand up on my job. REFEREE: While you were working? CLAIMANT: Yes. REFEREE: The first time you saw your doctor was January *9*, 1958? CLAIMANT: Yes."

Respondent insists that this means she told the doctor that she had a headache two or three days before she quit, and the referee found: "The claimant filed a claim for disability benefits with the department effective December 31, 1957. She stated on the claim that she became disabled on December 29, 1957, and her doctor's certificate verified that date. However, the certifying physician first attended the claimant for a disability diagnosed as 'extreme nervous state' on January 7, 1958. The claimant testified that she was suffering severe headaches and eye discomfort for some time before she was separated and that she was actually unable to work beginning December 29, 1957. She took 12 or more aspirins per day the

last two days of her employment in order to stay on the job at all.'' In the main the finding is contrary to the evidence. Mrs. Myers did not state in her claim that she became disabled on December 29,——that is to say, that the document originally said that the ''first full day I was too sick to work was December 29, 1957'' but the 29 has been stricken and 31 written above it and there is no explanation of the change in the record. All the evidence is to the effect that she worked the entire days of December 29 and 30. The referee's finding that ''claimant testified that she was suffering severe headaches and eye discomfort for some time before she was separated and that she was actually unable to work beginning December 29, 1957. She took 12 or more aspirins per day the last two days of her employment in order to stay on the job at all,'' is not only unsupported but is contrary to the evidence. The claimant's testimony last above quoted follows immediately after this: ''At the time I didn't realize, that I was having my ₁eadaches and it became acute—at the time I put the date in—that I had visited an eye doctor prior to the date that I had signed my name—on November 25—when I kept having those headaches while I was still under employment—not realizing, you know, and I went back to have my eyes tested and I kept on working, and I would avoid waiting —I was low on my salary compared with the other girls. And I kept thinking it was my glasses and I went November 25 again and he tested my eyes free of charge again and so my disability—my headaches which were really terrible—were almost a year just gradually working on to become acute in November ——.'' Her statement of January 7, 1958, that had the doctor's certificate attached, said: ''Did you leave your work because of your present sickness or injury? No.'' And the evidence of Mrs. Myers is not susceptible of a rational and substantial inference that she was disabled on December 29 or 30 or that she did not work both of those days. Nor is there any support for the statement that Mrs. Myers ''took 12 or more aspirins per day the last two days of her employment in order to stay on the job at all.'' That testimony plainly related to the preceding November. The decision of the Appeals Board is infected with the same fatal weakness for the board merely adopted the findings of the referee and had no additional evidence before it.

If it were true that Mrs. Myers told Dr. Shear that she had headaches two or three days before she quit or that she took the large amount of aspirin to be able to stay on the job, it

nevertheless remains true that there is no other basis for his opinion that she became disabled on December 29. That statement would be a competent showing of the basis for his opinion but not as independent proof of the fact. Juries are customarily so instructed. (See BAJI 33D; *Groat* v. *Walkup Drayage etc. Co.,* 14 Cal.App.2d 350, 357 [58 P.2d 200]; *Tierney* v. *Charles Nelson Co.,* 19 Cal.App.2d 34, 37-38 [64 P.2d 1150]; *Willoughby* v. *Zylstra,* 5 Cal.App.2d 297, 300 [42 P.2d 685]; *Davis* v. *Renton,* 113 Cal.App. 561, 564-565 [298 P. 834]; *People* v. *Brown,* 49 Cal.2d 577, 585-586 [320 P. 2d 5].)

The evidence is insufficient to sustain the finding that Mrs. Myers was disabled during her employment by appellant.

The judgment is reversed with instructions to set aside the decision of the California Unemployment Insurance Appeals Board and the decision of the referee and to take such other proceedings as may be consistent with the views herein expressed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied March 18, 1960, and respondents' petition for a hearing by the Supreme Court was denied April 20, 1960.