[Civ. No. 48046. Second Dist., Div. Three. Nov. 24, 1976.]

RICHARD B. CARLESON, as Director, etc., Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Real Party in Interest and Respondent.

146

## COUNSEL

Evelle J. Younger, Attorney General, Philip C. Griffin and Herbert A. Levin, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Donald L. Reidhaar, James E. Holst and Norman I. Lustig for Real Party in Interest and Respondent.

## OPINION

**FORD, P. J.**—Appellant, the Director of Department of Benefit Payments (hereinafter the Department), appeals from an order of dismissal made pursuant to Code of Civil Procedure section 581, subdivision 3, after the trial court sustained the general demurrer of the Regents of the University of California (hereinafter the Regents) to the Department's petition for writ of mandate. The Department waived its right to amend.

The Department is the agency of the State of California charged with the administration and enforcement of those portions of the Unemployment Insurance Code dealing with the payment of benefits due under that code. By its petition the Department sought judicial review, pursuant to Code of Civil Procedure section 1094.5, of a decision of the California Unemployment Insurance Appeals Board (hereinafter the Board) which ordered the Department to refund to the Regents certain sums paid by the Department to one L. Stoller, a former employee of the Regents, in excess of the maximum amount of unemployment benefits awarded to Mr. Stoller.

In its petition for writ of mandate the Department alleged that L. Stoller was at one time an employee of the Regents at UCLA. Mr. Stoller became unemployed and was eligible to receive unemployment benefits. The Department made an award to Mr. Stoller of $1,128, but in fact erroneously paid "benefits totalling $1,200.00."[1]

---

[1]In the decision of the referee which was adopted by the Board the following facts were found with respect to the overpayment: "The claimant [Mr. Stoller] was paid sixteen weeks benefits beginning with the week ending August 19, 1972 through the week ending December 2, 1972. Each of these weeks was paid at a rate of $75.00 for a total of

The Department alleged that the Regents have elected to finance their unemployment insurance coverage by the cost reimbursement method provided for in Unemployment Insurance Code section 803, subdivision (b)(1)[2] and that, accordingly, "[p]ursuant to the provisions of Unemployment Insurance Code section 803 U.C.L.A. is required to reimburse to the Department of Benefit Payments the amount of benefits paid to the employee [L. Stoller] by the Department . . . ." It is alleged that the Regents (UCLA) paid the assessment and then sought a refund of $72, "claiming it was not required to pay amounts in excess of the allowable amount of benefits." After the Department denied the Regents' claim for refund, a petition for review was heard by a referee. (§ 1180.) The referee in his decision, attached as exhibit A to the Department's petition, concluded: (1) that overpaid benefits paid to a claimant through error on the part of the Department were not included in the designation "benefits . . . paid based on base period wages" as to which the Department could seek reimbursement pursuant to section 803, subdivision (b)(1); that such "overpaid benefits" were in fact "administrative expenses," and (2) that it would "be against equity and due process" to hold the Regents liable for the overpayment because the Regents had had no opportunity to be heard with respect to the Department's unilateral decision (pursuant to § 1375) to waive the liability of the employee recipient to return overpayments.

The Department appealed from the referee's decision, and the Board affirmed the decision of the referee. In its decision, attached as exhibit B to the Department's petition, the Board stated as follows: "We adopt the referee's statement of facts and reasons for decision. We agree with his conclusion that amounts *erroneously* paid to the benefit claimant in *excess* of his potential maximum award are not 'benefits . . . paid based on base period wages with respect to employment for the entity.' Such amounts are beyond the statutorily defined limit for which additional cost reimbursement can be charged under the provisions of Unemployment Insurance Code section 803(b)(1). [¶] If the Legislature has left the Department without a fund against which it can charge these payments, the Department should address its grievance to the Legislature. Its

---

$1,200. The claimant should have been paid $3.00 for the week ending December 2, 1972, instead of the $75 payment that was made. [¶] This resulted in an overpayment of $72. The Department established the overpayment but then waived it against the claimant because he was without fault and recovery would have been against equity and good conscience. The $72 overpayment was made to the claimant through error on the part of the Department."

[2]All code references made hereinafter are to the Unemployment Insurance Code unless specifically stated to be otherwise.

position in this respect is no different from that in which it was placed for many years prior to the enactment of the first balancing account provisions in 1961. That the Department may not be able to charge the cost of the erroneous payment to the balancing account, is no justification for imposing upon petitioner a liability for paying amounts in excess of its statutorily defined liability."

In its petition for judicial review, the Department asserts that the Board's decision is "erroneous and contrary to law . . . in that Unemployment Insurance Code section 803 requires an employer who makes the election under Unemployment Insurance Code section 801 et seq. to pay into the Unemployment Fund all benefits actually paid to an employee, which includes benefits that have been overpaid."

In sustaining the Regents' demurrer to the Department's petition, the trial court stated: "Well, I don't think that a payment that is made by a computer by mistake is a benefit, so I am inclined to sustain the demurrer."

A return to a petition for a writ of mandate may be made by way of a demurrer. (Code Civ. Proc., §§ 1014, 1109; *Rodriquez* v. *Municipal Court*, 25 Cal.App.3d 521, 526 [102 Cal.Rptr. 45].) This rule appears to also apply to a petition under Code of Civil Procedure section 1094.5 where a review of an administrative order or decision is sought. Thus, in *Sears, Roebuck & Co.* v. *Walls*, 178 Cal.App.2d 284, at page 288 [2 Cal.Rptr. 847], the court stated as follows: "Section 1094.5 does not touch the matter of appearance by demurrer and it may be assumed that that is proper, as in other mandamus proceedings." In *Sears, Roebuck & Co.* v. *Walls, supra,* the petitioner sought review of a decision of the Unemployment Insurance Appeals Board and the petition included a transcript of the proceedings before the Department's referee. The appellate court noted that the then Department of Employment and the Unemployment Insurance Appeals Board were statewide administrative agencies created by statute and that their decisions were "subject to independent weighing of the supporting evidence by the trial judge when challenged under § 1094.5, Code of Civil Procedure." The trial court in the *Sears* case had sustained the demurrer of the Department and the Board without leave to amend and denied the writ. No findings were made. The appellate court concluded that under the circumstances of that case the failure of the trial court to make findings required reversal, stating: ". . . in a case where 1094.5 requires an independent review of the evidence and it [the evidence] is incorporated in the petition, as here, the procedural device

cannot control the court's action or dispense with its weighing the evidence; a demurrer to the petition does not present law points exclusively as it does in the ordinary civil action." (178 Cal.App.2d at p. 288.)

In the case presently before us the transcript of the hearing before the referee was not included in the petition filed in the trial court pursuant to Code of Civil Procedure section 1094.5. While the referee's decision includes a "Statement of Facts," there is no dispute as to those facts and the only issue presented in the administrative proceeding, as well as in the proceeding before the trial court, was an issue of law, to wit: the interpretation of those provisions of the Unemployment Insurance Code governing the liability of reimbursement employers for benefits paid to their former employees.

Clearly, the problem presented in *Sears, Roebuck & Co.* v. *Walls, supra,* 178 Cal.App.2d 284, does not exist in this case. If the trial court was correct in its ruling sustaining the demurrer, there was no necessity for an exercise of its independent judgment with respect to the evidence presented in the administrative proceeding and the making of findings of fact in accordance therewith.

Accordingly, we turn to a consideration of the legal issue presented by the Regents' demurrer to the Department's petition.

Section 802, subdivision (a), provides that any instrumentality of the State of California for which services are performed which constitute employment under sections 605, 605.1 or 605.5 "may, in lieu of the contributions required of employers, elect to finance its liability for unemployment compensation benefits, extended duration benefits, and federal-state extended benefits with respect to such services by any method of financing coverage that is permitted under Section 803." The method of financing coverage elected by the Regents is that permitted under section 803, subdivision (b)(1), which provides in pertinent part as follows: "(b) In lieu of the contributions required of employers, an entity may elect any one of the following: [¶] (1) To pay into the Unemployment Fund in the State Treasury at the times and in the manner provided in subdivision (c) [*sic* (d)] [3] of this section, an amount equal to

---

[3]The reference to subdivision (c) in subdivision (b)(1) appears to be the result of an inadvertent error in drafting on the part of the Legislature. Subdivision (d) of section 803 relates to the times and manner provided for payment by a reimbursement employer of its obligations under section 803. We treat the reference to subdivision (c) in subdivision (b)(1) as though it were a reference to subdivision (d) in accordance with the obvious intent of the Legislature. (*People* v. *King,* 28 Cal. 265, 273-276.)

the additional cost to the Unemployment Fund of the benefits, including extended duration benefits and federal-state extended benefits, paid based on base period wages with respect to employment for the entity. Benefits otherwise payable irrespective of this section shall be charged to employers' accounts in accordance with other sections of this division, but *the additional cost to the Unemployment Fund of the benefits paid based on base period wages with respect to employment for an entity pursuant to this section shall be borne solely by the appropriate entity.*" (Italics added.)

 It is the Department's contention on this appeal that the sum of $72 paid to Mr. Stoller, admittedly as a result of departmental error, "was a benefit within the meaning of . . . section 803(b)(1) so as to require the Regents to reimburse the Director for the payment of this sum." The Regents' opposition is stated succinctly in their brief as follows: "The Regents' position is that only those amounts of money, whether denominated benefits, amounts, or payments, which are paid by the Department in the ordinary and necessary course of events under Unemployment Insurance Code, Section 803(b)(1) are the lawful payments for which The Regents must reimburse the Department. Such payments include benefits provided for by the Unemployment Insurance Code to the maximums therein, and 'anticipated overpayments'—payments made to individuals who are subsequently found to be ineligible in whole or in part at some stage of the administrative process, but which payments are made immediately and prior to a conclusive eligibility determination, pursuant to the dictates of *Gillies [Gilles]* v. *Department of Human Resources Development* (1974) 11 Cal.3d 313, and *California Human Resources Department* v. *Java* (1971) 402 U.S. 121. Payments of anticipated overpayments are inevitable and anticipated in the operations of the Unemployment Insurance system. They are based on base period wages in the sense that they are an ordinary consequence of the payment of the base period wages. [¶] By contrast, the payments for which The Regents disclaims responsibility are 'administrative error overpayments' made to individuals because of random errors of the Department, such as clerical overpayments and computer program errors. Such are not 'benefits . . . paid based on base period wages.' (§ 803(b)(1))."

The Department, stressing what it terms "the simple justice" of requiring reimbursement employers to shoulder the cost of departmental error overpayments, contrasts the obligations of tax rate employers and

reimbursement employers. Tax rate employers must pay unemployment insurance contributions into the Unemployment Fund (§ 976) according to the tax schedules set forth in section 977 or section 978. A separate reserve account is maintained by the Department for each tax rate employer, to which are credited all the contributions paid by such employer. Unemployment benefits paid to an unemployed individual are charged against his employer's reserve account. (§ 1026.) In addition, all tax rate employers must contribute to the Unemployment Fund at a rate which is the same for all such employers and is based upon a scale related to the credits to and charges against a balancing account provided for in section 1027. (§ 976.5.)

The balancing account is used to pay, among other items, charges for benefits paid against tax rate employers which are subsequently determined not to be properly chargeable against the tax rate employers' respective reserve accounts. (§ 1027, subd. (b)(2).) It is also charged with "[o]ther items of expense and benefit charges not included in active employer reserve accounts." (§ 1027, subd. (b)(5).)

The tax rate employers pay contributions based on two annually determined percentages of covered wages, regardless of whether benefits are paid to any employee of such employer during that period. Unused credits accumulate to the tax rate employer's reserve account and reduce such employer's contribution rate to the Unemployment Fund in the following year. (See e.g., § 976.5, subd. (b).)

Reimbursement employers, such as the Regents in this case, are not subject to those contributions and are required to pay into the Unemployment Fund only that sum which is equal to the additional cost of benefits paid based on base period wages with respect to employment for such reimbursement employer. (§ 803, subd. (b)(1).)[4]

Every employer (not exempted by some provision of law) must pay a federal unemployment tax (26 U.S.C. § 3301.) The employer receives a credit against the federal tax for state unemployment tax paid. (26 U.S.C. § 3302.) The revenue from the federal tax is returned to the states to finance the administration of their unemployment insurance systems. (42 U.S.C. §§ 501-504, 1101-1108, 1321-1324; Unemp. Ins. Code, §§ 1555-1562.) Reimbursement employers are exempt from liability for

---

[4]The operation of reimbursement financing is explained in California Administrative Code, title 22, section 803-1.

■

federal unemployment tax. Accordingly, only tax rate employers fund the administration of the unemployment insurance system.

The Unemployment Insurance Code contains provisions respecting what the Regents have termed "anticipated overpayments." We adopt this terminology for convenience to distinguish between "anticipated overpayments" and "error overpayments," the type of overpayment involved in this case. "Anticipated overpayments" include payments of benefits made after a determination allowing benefits and pending appeal of such determination. (See e.g., § 1335; *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 298 [109 P.2d 942, 132 A.L.R. 715]; *Gilles* v. *Department of Human Resources Development*, 11 Cal.3d 313, 318 [113 Cal.Rptr. 374, 521 P.2d 110].)

If the decision allowing benefits is finally overturned on appeal, "anticipated overpayments" are not charged against the tax rate employer's reserve account but are charged to the Unemployment Fund's balancing account. (§ 1027.) Likewise, if a tax rate employer successfully challenges a claimant's right to benefits by supplying requisite information pursuant to sections 1030 or 1032.5, any benefits paid to the claimant are not chargeable to the employer's reserve account (§§ 1032, 1032.5) but, instead, are chargeable to the balancing account (§ 1027, subd. (b)(2)).

These overpayments which we have termed "anticipated overpayments" are still benefits based on base period wages and such anticipated overpayments do not in the normal course of the administration of the unemployment insurance system exceed the maximum unemployment benefits allowable to a claimant. The "error overpayment" made in this case did in fact exceed the maximum benefits allowable to Mr. Stoller and as such the $72 overpayment did not consist of "benefits based on base period wages" as that term is used in section 803, subdivision (b)(1).

The various provisions for the noncharging of benefits paid as "anticipated overpayments" to the tax rate employer's reserve account are not available to reimbursement employers. Thus subdivision (c) of section 803 provides: "Sections 1030, 1030.5, 1031, 1032, and 1032.5, and any provision of this division for the noncharging of benefits to the account of an employer, shall not apply to an election under subdivision (b) of this section."

Error overpayments, such as the type of overpayment which occurred in this case as a result of the Department's error, made with respect to the account of a tax rate employer are charged to the balancing account of the Unemployment Fund. While there is no provision in the code which specifically mentions what we have termed, for convenience, "error overpayments" and which provides that such "error overpayments" are not to be charged to tax rate employers' reserve accounts, the Department contends that such "error overpayments" are included in the designation "benefits erroneously or unlawfully paid" in section 1380, which benefits are specifically charged to the balancing account by the provisions of subdivision (b)(2) of section 1027. Thus, section 1380 provides in pertinent part: "An employer's experience rating account shall not be charged with any benefits erroneously or unlawfully paid." Section 1027, subdivision (b)(2), provides that the balancing account shall be charged with "Benefit payments not charged to employer reserve accounts pursuant to Sections . . . 1380 . . . ."

Section 1380 is not specifically mentioned in subdivision (c) of section 803. However, on this appeal the Department contends that since section 1380 is a "provision . . . for the noncharging of benefits," pursuant to section 803, subdivision (c), it is not applicable to reimbursement employers. The Department concludes that ". . . under Unemployment Insurance Code section 803(c), the accounts of reimbursement employers are, indeed, to be charged with 'benefits erroneously or unlawfully paid.' "

The Regents argue that under section 803, subdivision (b)(1), the Regents are only required to reimburse the Unemployment Fund for the additional cost of "benefits . . . paid *based on base period wages* with respect to employment for the entity." (Italics added.) They assert that provisions specifically mentioned in section 803, subdivision (c), relate to anticipated overpayments and not error overpayments. While the Regents concede liability for anticipated overpayments, which are based on base period wages, the Regents reject the contention that there is liability on the part of the Regents for overpayments not based on base period wages.

There are several provisions for the noncharging of benefits to a tax rate employer's reserve account other than those mentioned specifically in subdivision (c) of section 803.[5] (See §§ 1034-1036, 1335, 1338, 1380,

[5]Subdivision (c) of section 803 is as follows: "Sections 1030, 1030.5, 1031, 1032, and 1032.5, and any provision of this division for the noncharging of benefits to the account of an employer, shall not apply to an election under subdivision (b) of this section."

1404 and 1406.) The sections specifically mentioned in section 803, subdivision (c), namely sections 1030-1032.5, provide for procedures, as noted hereinabove, whereby an employer can challenge the factual basis for a claimant's application for unemployment benefits. Under the specific provisions of section 803, subdivision (c), these procedures are unavailable to reimbursement employers, as well as are the specific provisions of the code (§§ 1032 and 1032.5) for noncharging of benefits as a result of proceedings had under sections 1030-1032.5. The next portion of subdivision (c) of section 803 provides "and any provision of this division for the noncharging of benefits to the account of an employer, shall not apply to" reimbursement employers. Accordingly, not only are the procedures for which provision is made in sections 1030-1032.5 unavailable to reimbursement employers, but, in addition, any other provision for the noncharging of benefits to the account of an employer is also unavailable to a reimbursement employer.

The reason for the unavailability to reimbursement employers of code sections relating to the noncharging of benefits appears to be clear. Under section 1027, subdivision (b)(2), benefit payments not charged to employer reserve accounts pursuant to sections 1032, 1032.5, 1034, 1035, 1036, 1335, 1338, 1380, 1404 and 1406 are charged to the Unemployment Fund's balancing account. Since reimbursement employers are not required to contribute to the balancing account, they are not entitled to the benefit of those sections providing for the noncharging of benefits to an employer's reserve account.

Section 1380, which is applicable to benefits erroneously or unlawfully paid, is a provision for the noncharging of such benefits to the account of a tax rate employer. Under the provisions of subdivision (c) of section 803, the provisions of section 1380 are not applicable to reimbursement employers. As will be explained, the fact that the provisions of section 1380 are not applicable to reimbursement employers does not mean ipso facto that such employers are liable for departmental overpayments erroneously or illegally made.

Section 803 is the major section pertaining to the methods of financing the unemployment insurance of reimbursement employers. ■ It is a well established rule of statutory construction that, in attempting to ascertain the intention of the Legislature, effect should be given to the

statute as a whole and to every word and clause thereof, leaving no part or provision useless or deprived of meaning. (Code Civ. Proc., § 1858; *Weber* v. *County of Santa Barbara,* 15 Cal.2d 82, 86 [98 P.2d 492]; *People* ex rel. *Younger* v. *Superior Court,* 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].)

 As noted hereinabove, the only monetary obligation imposed on reimbursement employers who have elected the method of financing coverage set forth in section 803, subdivision (b)(1), is to pay into the Unemployment Fund an amount equal to the additional cost to the fund of benefits paid based on base period wages with respect to employment for the entity. Any amount exceeding the maximum amount of allowable benefits does not constitute "benefits paid based on base period wages," and a reimbursement employer has no obligation to pay such amounts under the specific terms of section 803. In fact, the Legislature has provided that if any such overpayments are charged against the account of a reimbursement employer, the provisions of the code relating to refunds and overpayments are applicable. Subdivision (d) of section 803 provides generally for the manner in which payments required of a reimbursement employer under section 803 are to be made. The last sentence of that subdivision provides as follows: "The provisions of Sections 1177 to 1184, inclusive, relating to refunds and overpayments, shall apply to amounts paid to the Unemployment Fund pursuant to this section." Section 1177 is as follows: "Except as provided in subdivision (b) of Section 1178, [6] if the director determines that any amount of contributions, penalty or interest has been erroneously or illegally collected he shall set forth on the records of the department the amount collected in excess of the amount legally due and the name of the employing unit or other person by whom it was paid and shall refund the amount to the employing unit or other person by whom it was paid if the amount does not include refundable worker contributions. If refundable worker contributions are involved and a claim has not already been filed the director shall give notice to such employing unit or other person of such amount. The excess amount shall be credited on any amounts then due from or accrued against the employing unit and

---

[6]Subdivision (b) of section 1178 provides as follows: "No refund shall be made or credit allowed unless a claim therefor is filed with the director within three years from the last day of the calendar month following the close of the calendar quarter for which the overpayment was made or within six months after assessments made under Article 8 (commencing with Section 1126) of this chapter become final or within 60 days from the date of overpayment, whichever period expires the later, but prior to the expiration of such periods even though no claim is filed the director on his own initiative shall make refunds pursuant to Section 1177 or may allow credits."

the balance shall be refunded to the employing unit or its successor, administrators or executors." Section 1177 refers to contributions that have been "erroneously or illegally" collected, using the same language as that used to describe the overpayments covered by section 1380. Contributions erroneously or illegally collected would include contributions collected as a result of error overpayments of the type involved in this case, if they were beyond the statutory obligations of the reimbursement employer. In this case the obligations of the Regents are limited by the terms of section 803, subdivision (b)(1), and do not include amounts which exceed benefits paid based on base period wages. Section 1177 mandates the refund of such erroneously or illegally collected contributions.

Accordingly, we hold that the trial court correctly interpreted the applicable provisions of the Unemployment Insurance Code and did not err in sustaining the Regents' demurrer to the Department's petition for writ of mandate.

The order of dismissal is affirmed.

Allport, J., and Potter, J., concurred.