[Civ. No. 70057. Second Dist., Div. Seven. May 8, 1985.]

HOOVER COMMUNITY HOTEL DEVELOPMENT CORPORATION, Plaintiff and Appellant, v.
MICHAEL THOMSON et al., Defendants and Respondents.

**COUNSEL**

Howard C. Alphson, Christopher Ashworth, Kathryn E. Magloff, and Garfield, Tepper & Ashworth for Plaintiff and Appellant.

Simon, Buckner & Midgal, Scott Simon, Paul, Hastings, Janofsky & Walker, David M. Roberts, Judith L. Meadow, Sheppard, Mullin, Richter & Hampton and James J. Carroll III for Defendants and Respondents.

**OPINION**

**EARLY, J.**\*—Hoover Community Hotel Development Corporation, plaintiff below, appeals from summary judgments granted to defendants in an action arising out of the refusal of defendant the Lutheran Church-Missouri Synod (Church) to sell a parcel of real estate (Parcel M-4) to Hoover on March 30, 1978, and its subsequent alleged sale to defendant Michael Thomson.

Plaintiff has alleged "conspiracy and breach of contract against all defendants," "tortious interference with business relations against all defendants except Church," seeks declaratory relief against all defendants and specific performance against the Church.

Neither in this court nor the trial court has plaintiff contended that the declarations in support of defendants' motions for summary judgment, considered separately, do not establish complete defenses to the complaint. Thus plaintiff has effectively waived any such contention in this court. (*Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].) Instead, plaintiff contends that triable issues of fact are created by the declarations and depositions it filed in opposition to the motions.

Hoover does complain, however, that it filed detailed written objections to the declarations submitted by defendants in support of their motions for summary judgment but that the trial court failed to consider them, stating that "I have not considered nor will I rule specifically upon 103 . . . evidentiary objections." However, this experienced, esteemed and truly learned trial judge immediately added that "I will only consider legally admissible evidence in connection with any rulings I make." ˙ Hoover fails to specify a single evidentiary objection which the trial court should have, but did not sustain to Hoover's prejudice. This failure constitutes a

---

\*Assigned by the Chairperson of the Judicial Council.

waiver on appeal of any possible error in this respect. (*Henderson* v. *Security Nat. Bank, supra,* 72 Cal.App.3d at p. 769 and cases cited therein.)

 Hoover desired to purchase Parcel M-4 to develop it jointly with an adjacent site (Parcel M-3) which it had agreed to develop pursuant to a participation agreement with the Redevelopment Agency of the City of Los Angeles, California (CRA), executed on August 20, 1971. By an implementation agreement which Hoover signed on March 17, 1978, and CRA signed on April 10, 1978, Parcel M-4 was added for the first time to the original site (Parcel M-3) that Hoover agreed to develop for CRA.

Defendant Thomas C. Butz was the business administrator of the Church. Defendant the Seely Company through its employee, defendant Thomas E. Taylor, acted as the Church's broker in selling Parcel M-4. Defendants Bruce Gelker, L. Wayne Gertmenian and S. Joseph Spence are alleged to have tortiously conspired with the other defendants to interfere with Hoover's contract with CRA to develop a site which included Parcel M-4 in direct violation of a contract, the option agreement, dated February 29, 1972, between Gelker, Spence and Thomson on one hand and Hoover's predecessor in interest on the other. The option agreement was drafted by counsel for Hoover. By paragraph 7(d) Gelker, Spence and Thomson expressly agree "that they will not for a period of five (5) years, either individually or jointly, or through a partnership, corporation, or other entity or organization, directly or indirectly engage in the development, construction or operation of any improvements within" an area that included Parcel M-4 "which would in any way compete with the operation or development of said Project . . . ." Elsewhere in the option agreement the parties thereto recite that they "have heretofore entered into an agreement for the joint development of certain property designated Parcel M-3 in the area known as the 'Hoover Redevelopment Area' herein referred to as the 'Project'" and that Hoover (an entity in which the parties to the option agreement were then "equal shareholders") had entered into a written participation agreement dated August 20, 1971 with CRA. That participation agreement describes the site to be developed as Parcel M-3 in the project area, i.e., Parcel M-3A and Parcel M-3B with reference to an attached map which also shows Parcels M-1, M-2, M-4 and M-5. Parcel M-4 is contiguous to Parcel M-3B which separates it from Parcel M-3A.

The option agreement also provided in paragraph 7(a) that Gelker, Spence and Thomson "shall not take any actions . . . which would in any way affect the existence or performance of this agreement, [or] the said Participation Agreement . . . ."

The option agreement recites that Gelker, Spence and Thomson "further desire to ultimately withdraw from and to grant to [Hoover's predecessor in interest] the right to acquire their position in said Project *consistent with the time to time requirements of the CRA and the Participation Agreement* at [their] out of pocket costs, expenses, and services." (Italics added.)

The option agreement of February 29, 1972, represented a resolution of the efforts of two competing groups each of which desired to acquire and develop Parcel 3-M under contract with CRA. These groups included Hoover's predecessor in interest on one hand and Thomson, Spence and Gelker on the other.

The option agreement is silent as to the date of commencement of the covenant not to compete for a five-year period in paragraph 7(d). The agreement was dated February 29, 1972. On the same date the same parties executed escrow instructions designating plaintiff's counsel as escrow holder. The escrow was closed on September 8, 1972.

Appellant states that "the parties intended the covenant to commence on January 30, 1974" which is the date the option was exercised by Hoover. However, defendants contend that it was effective upon execution and delivery of the option agreement on February 29, 1972. Defendants rely on the provisions of Civil Code sections 1626, 1654 and 1657 to the effect that a contract in writing takes effect immediately upon its delivery to the party in whose favor it is made, that in cases of uncertainty the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist and that if there is no specified time for the performance of an act under a contract and the act can be performed instantly the time for performance is immediately. The declarations and depositions filed by Hoover in opposition to the motions for summary judgment include no evidence that, during the negotiations for the execution of the agreement, any of the parties expressly stated an intent that the covenant not to compete should not commence to run until the option was exercised on January 30, 1974, or that any defendant subsequently expressed such an understanding.

The declaration of Glen Arbogast, president of Hoover, filed in opposition to the motion for summary judgment states that "the Option Agreement became effective on September 8, 1972, upon such delivery to Optionee out of Escrow." If true, this admission destroys Hoover's contention that the five-year covenant not to compete did not commence to run until the option was executed on January 30, 1974; likewise, it destroys Hoover's conten-

tion that the activity of the defendant Thomson of which Hoover complains by which Thomson competed with Hoover for the purchase of Parcel M-4 occurred before the five-year period expired. Arbogast also declares that "Thomson first contacted Taylor concerning the Church property [Parcel M-4] sometime between January 10 and 25, 1978"—more than five years later! ■ This statement in the declaration regarding the effective date of the agreement is at best a conclusion of law which is utterly ineffective to raise a triable issue of fact. (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 743 [135 Cal.Rptr. 483]; *McIvor* v. *Savage* (1963) 220 Cal.App.2d 128, 134 [33 Cal.Rptr. 740].) It is no more than an expression of the declarant's personal opinion to which he could not competently testify (*Murphy* v. *Kelly* (1955) 137 Cal.App.2d 21, 28 [289 P.2d 565]) and, therefore, it is not sufficient to raise a triable issue of fact.

The declaration also contains several bald conclusions of law that the five(5)-year period continued to January 31, 1979; these, of course, cannot create a triable issue of fact. One of the strongest such statements follows: "It was the purpose and intent of the parties in executing the Option Agreement [*sic*] and referring 'to the Participation Agreement, and/or the time to time requirements of the CRA,' that any subsequent Amendment entered into with respect to the Parcel M area, whether by area change or modification in time or other respect, that the continuing covenants of the Option Agreement with respect to interference with the Participation Agreement, and/or the requirements of the CRA or affecting the Option Agreement, or competition within the time limit from the exercise of the option and five(5) years thereafter, i.e., until January 31, 1979, should not thereby become ineffective due to such amendment." Our appellate courts have consistently held that a statement of someone else's intent, as contrasted with a statement of one's own intent, is a mere conclusion of law. (*Taylor* v. *Parsons* (1940) 41 Cal.App.2d 315, 317 [106 P.2d 638]; *People* v. *Seccombe* (1930) 103 Cal.App. 306, 310 [284 P. 725].) In *California etc. Co.* v. *Union etc. Co.* (1899) 126 Cal. 433 [58 P. 936], our Supreme Court reversed a judgment based upon testimony of someone else's intent because such testimony "unsupported by any facts tending to show that he knew what their intention was" (*id.*, at p. 442) was not competent to support a finding. This legal principle has stood unchallenged in this century. ■ In fact, all statements in opposition to a motion for summary judgment which are incompetent as evidence must be disregarded. (*Schessler* v. *Keck* (1956) 138 Cal.App.2d 663, 669-670 [292 P.2d 314].) Nothing indicates that recent amendments to Code of Civil Procedure section 437c were intended to make any change in this rule. See *Sesma* v. *Cueto* (1982) 129 Cal.App.3d 108, 113 [181 Cal.Rptr. 12], reversing a summary judgment because it was based on declarations that were conclusionary in nature rather than evidentiary.

A bare conclusion of law is simply not sufficient even though uncontradicted to support a motion for summary judgment nor to create a triable issue of fact when filed in opposition to such a motion. (*C. L. Smith Co.* v. *Roger Ducharme, Inc., supra,* 65 Cal.App.3d 735, 743; *Koret of Cal., Inc.* v. *City etc. of San Francisco* (1969) 2 Cal.App.3d 87, 91 [81 Cal.Rptr. 698]; *Krupp* v. *Mullen* (1953) 120 Cal.App.2d 53, 57 [260 P.2d 629].) "Opinions . . ., even though uncontradicted, are worth no more than the . . . factual data upon which they are based." (*Griffith* v. *County of Los Angeles* (1968) 267 Cal.App.2d 837, 847 [73 Cal.Rptr. 773], cert. den. 395 U.S. 945 [23 L.Ed.2d 463, 89 S.Ct. 2018].) If an opinion " ' "is not based upon facts otherwise proved . . . it cannot rise to the dignity of substantial evidence." ' " (*San Diego & Elec. Co.* v. *Sinclair* (1963) 214 Cal.App.2d 778, 783 [29 Cal.Rptr. 769]; *Sears, Roebuck & Co.* v. *Walls* (1960) 178 Cal.App.2d 284, 289 [2 Cal.Rptr. 847].) " 'If the evidence has . . . insufficient probative force to sustain the proposition for which it is offered, the want of objection adds nothing to its worth and will not support a finding.' " (*Kitchel* v. *Acree* (1963) 216 Cal.App.2d 119, 124 [30 Cal.Rptr. 714].) The rule of liberal construction which is applied to papers opposing motions for summary judgment has never been stretched so far as to hold that a triable issue of fact is created by a declaration that contains no evidentiary facts at all. (*C. L. Smith Co.* v. *Roger Ducharme, Inc., supra,* 65 Cal.App.3d 735, 743; *Koret of Cal., Inc.* v. *City etc. of San Francisco, supra,* 2 Cal.App.3d 87, 91; *Colvig* v. *KSFO* (1964) 224 Cal.App.2d 357, 364 [36 Cal.Rptr. 701].)

The Arbogast declaration also states that "Optionors agreed in Paragraph 7(d) that they would not, for a period of five (5) years *after the option was exercised and Optionee acquired their interest in Hoover* . . . in any way compete . . . ." (Italics added.) However, the option agreement is before the court and it does not say this! There is nothing, absolutely nothing, in the option agreement to support the italicized language just quoted. A statement whose credibility has been destroyed by prior admissions or other conclusive evidence such as this, even though set forth in a declaration opposing a motion for summary judgment, has been held repeatedly not to constitute substantial evidence of the existence of a triable issue of fact. (*Burgon* v. *Kaiser Foundation Hospitals* (1979) 93 Cal.App.3d 813, 822-823 [155 Cal.Rptr. 763]; *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 160-162 [144 Cal.Rptr. 794].)

Hoover contends alternately (A) that the option agreement was not effective "until September 8, 1972, when it was delivered out of escrow" in which event the five-year covenant not to compete would have

expired on September 8, 1977 and (B) that the covenant "did not expire until five (5)-years after the exercise by Hoover of the Option Agreement on January 30, 1974, i.e., January 29, 1979."

Nothing in the record indicates that signed copies of the option agreement were not exchanged by the parties when it was executed on February 29, 1972. That this was done is the only reasonable inference that can be drawn from the facts in the record, an inference that the trial court was required to consider. (Code Civ. Proc., § 437c, subd. (c).) Nothing in the option agreement itself indicates that it was to be effective until a later date. Nothing indicates that the agreement itself was to be placed in escrow. The escrow instructions executed concurrently provide for the delivery from escrow to defendants Gelker, Spence and Thomson of a $20,000 check after receipt, for later delivery to Hoover's predecessor in interest, of certain instruments necessary to enable Gelker, Spence and Thomson to become officers, directors and shareholders of Hoover plus a fully executed copy of the option agreement "approved by the CRA." None of these provisions has the effect of delaying the effective date of the option agreement until delivery from escrow of a fully executed copy of the option agreement "approved by CRA." Likewise, the provision in the escrow instructions that "if no approval, Option Agreement shall be null and void" is simply a condition subsequent which never occurred. Nothing in the record supports Hoover's contention that the option agreement did not become effective until the close of escrow on September 8, 1972.

On September 7, 1972, counsel for Hoover wrote to counsel to Thomson, Spence and Gelker regarding the escrow asking whether "an anticipatory breach is contemplated with respect to the Option Agreement," referring to paragraphs 7(b) and 7(a) thereof without being more specific. Counsel for Thomson, Spence and Gelker responded the next day denying that they intended to take any action whatsoever or assert any claim against Hoover and expressing surprise that Hoover considered that there might be an "anticipatory breach" under paragraphs 7(a) and 7(b). Hoover contends that this exchange indicates an intention of the parties that the covenants under paragraph 7 would commence upon the exercise of the option and not before. This is an unreasonable inference. The mere fact that some, not all, of the actions agreed to be performed under a contract are not due until a later date and there is a present anticipation of a possible future repudiation of the promised performance is not a valid basis for concluding that the contract is not presently binding and effective.

Hoover also asserts that until it exercised the option on January 30, 1974, it had no title or interest with which Thomson, Spence and Gelker could compete. But no such title or interest was necessary. That Hoover's pre-

decessor in interest had already been competing with Thomson, Spence and Gelker for the right to enter into a contract with CRA for the development of Parcel M-3 was the very circumstance that led to the negotiated termination of that competition by execution of the option agreement. In that instrument the parties thereto recite that they have "heretofore entered into an agreement for the joint development of certain property designated Parcel M-3." To interpret the agreements between these parties as permitting such competition until the option should be exercised would frustrate a primary purpose of the agreements for which Hoover agreed to pay substantial consideration. So long as Hoover continued to negotiate with CRA for the right to develop Parcel M-3, competition from business rivals was a real possibility, existence of the covenant not to compete was desirable from Hoover's point of view and Hoover could have enforced it against Thomson, Spence and Gelker.

Hoover notes that the option agreement provided that the articles of incorporation and bylaws of Hoover were to be amended to add defendants Gelker, Spence and Thomson to its board of directors and to elect them as officers. Hoover asserts that this forthwith automatically precluded those defendants from competing with Hoover. However, nothing in the record indicates that these things were done immediately. It is reasonable to infer—and nothing in the record contradicts this inference—that there was a reasonable lapse of time after execution of the option agreement on February 29, 1972, before these things were accomplished. For instance, exhibit 16 attached to the Arbogast declaration discloses that counsel for Hoover did not mail his shares of stock in Hoover and other documents relating to the officers and directors of Hoover to defendant Spence until May 31, 1972— three months after the option agreement was executed. During this lapse of time said defendants were precluded from competing with Hoover, if at all, only by the provisions of the option agreement. The only reasonable inference from these facts is that it was the intention of the parties that the covenant not to compete should become effective immediately; the contrary inference would be most unreasonable. The court so concludes. █ As the opinion states in *C. L. Smith Co.* v. *Roger Ducharme, Inc., supra,* 65 Cal.App.3d 735 at page 742: "In ruling upon motions for summary judgment, the trial court is now permitted to draw inferences from related facts set forth in the declarations. According to the late Justice Kerrigan in *Hale* v. *George A. Hormel & Co.* [1975] 48 Cal.App.3d 73, 81 [121 Cal.Rptr. 144], '. . . "the court [in passing on motions for summary judgment] is not limited to a search for 'facts' regarding a particular issue but may draw inferences regarding that issue from related facts set forth in the affidavits. . . ." (*People* v. *Rath Packing Co.,* [1974] 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].)' "

, This disposes of all of Hoover's arguments to the effect that its papers opposing the motions for summary judgment created a triable issue of fact as to the five-year period embraced within the covenant not to compete in paragraph 7(d) of the option agreement. No such issue was created. Pursuant to the provisions of Civil Code sections 1626, 1654 and 1657, the five-year period commenced February 29, 1972, and had expired by March 1, 1977. It was after this date, i.e., between January 10 and 25, 1978, that Hoover complains that any defendant first participated in acts which Hoover alleges violated the five-year covenant not to compete. By then, of course, the covenant had expired.

 Hoover relies exclusively upon the provision in the preamble to the option agreement that "Optionors further desire to ultimately withdraw from and to grant the Optionee [Hoover] the right to acquire their position in said Project consistent with the time to time requirements of the CRA and the Participation Agreement" to support its contention that defendants Thomson, Spence and Gelker thereby bound themselves under paragraph 7(a) thereof not to "take any actions" which would in any way interfere with Hoover's purchase of Parcel M-4 from the Church. However, as of February 29, 1972, the option agreement and the participation agreement each described only Parcel M-3 as the site to be developed. Although Parcel M-4 appears on the map attached to the participation agreement, it is not mentioned in either document. Nothing in either instrument either expressly or impliedly indicates that the parties contemplated thereafter modifying either one to include Parcel M-4 in the site to be developed. Such modification occurred for the first time by the implementation agreement to which neither Thomson, Spence nor Gelker were parties which was signed by Hoover on March 17, 1978, and by CRA on April 10, 1978. The obligation of said defendants under paragraph 7(a) of the option agreement not to "take any actions . . . which would in any way affect the existence or performance of this agreement, [or] the said Participation Agreement" is limited to those agreements in their unmodified condition as they existed on February 29, 1972—agreements which made no reference whatsoever to Parcel M-4. Said paragraph 7(a), although unlimited in time, in no way restricted said defendants' rights to negotiate for, to purchase or to develop Parcel M-4.

Hoover asserts that as of March 30, 1978, it had an enforceable contract with the Church to purchase Parcel M-4, a contract which on that date the Church refused to honor. Hoover seeks specific performance, further claiming that the Church is promissorily estopped to deny the existence of a binding contract to sell Parcel M-4 to Hoover.

On February 24, 1978, Hoover made a written offer accompanied by a $1,000 check as a refundable deposit to defendant the Seeley Company,

acting as broker for the Church, to buy Parcel M-4 for $100,500. The check was given solely in relation to this offer, was never cashed and was returned on April 4, 1978. The offer provided that unless accepted within five days it should be "deemed revoked." It was never accepted. Arbogast admits that Hoover negotiated with the Church only for an outright purchase of Parcel M-4; an option was never discussed.

By letter of March 3, 1978, defendant Butz stated that he was recommending acceptance of Hoover's offer, which letter defendant Taylor of the Seeley Company forwarded to Hoover by cover letter dated March 6, 1978.

At a meeting on March 10, 1978, Butz and Taylor advised Arbogast that Hoover's offer was too low, but that the Church would have Parcel M-4 appraised and would sell it to Hoover for the appraised value. This counteroffer by the Church was never accepted either orally or in writing on behalf of Hoover.

On March 20, 1978, Taylor called Arbogast and told him that the preliminary appraisal figures were a low of $96,000 and a high of $110,000. On March 28, 1978, Arbogast advised that he was withdrawing Hoover's offer at noon on the 29th. On the 29th, Butz informed Arbogast that the price for Parcel M-4 based on the appraisal was $110,000 and offered to sell it to Hoover at that price. Arbogast did not accept; hence, there was no contract to sell or option to buy at this point. Arbogast told Butz that the price was higher than anticipated, that he wanted to discuss the matter with others and would "get back to [Butz] tomorrow." Butz said, "Taylor's handling this thing; you go ahead and call Taylor back." In his deposition of June 7, 1978, Arbogast admits: "And that was basically where the conversation ended." In his deposition of August 24, 1982—four years later—Arbogast states that it was Butz' "agreement that he would leave [the offer to sell for $110,000] open for us until the following day." ▮▮ ▮▮ This is another instance in which the trial court was justified in rejecting the later statement of the declarant as not constituting evidence substantial enough to create a triable issue of fact because its credibility had been destroyed by the prior admission. (*Burgon* v. *Kaiser Foundation Hospitals, supra,* 93 Cal.App.3d at pp. 822-823.)

In *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567 at pages 573-574 [142 Cal.Rptr. 716] the opinion states that: "We are also mindful of the rule expressed in *Leasman* v. *Beech Aircraft Corp.* [1975] 48 Cal.App.3d 376, 382 [12] Cal.Rptr. 768], that when a defendant can establish his defense with the plaintiff's admission sufficient to pass the strict construction test imposed on the moving party, the credibility of the admissions are valued

so highly that the contradicting affidavits may be disregarded as irrelevant, inadmissible or evasive (see also *D'Amico* v. *Board Medical Examiners* [1974] 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10]; *King* v. *Andersen* [1966] 242 Cal.App.2d 606, 610 [51 Cal.Rptr. 561]). The reason for this rule was spelled out in *D'Amico, supra,* which at page 22 states, '. . . admissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts.' (See Bauman, *California Summary Judgment*: *A Search For a Standard,* 10 UCLA L.Rev. 347.)"

The next day, before Hoover had a chance to accept the Church's offer to sell Parcel M-4 for $110,000, the Church agreed to sell it to Thomson at a higher price and withdrew its offer to sell it to Hoover. Hoover argues that the Church is promissorily estopped from withdrawing its offer to sell Parcel M-4 to Hoover. However, Hoover has failed to establish in its declarations or otherwise that it had detrimentally changed its position in reliance on Butz' conduct after Hoover failed to accept the offer Butz made on behalf of the Church on March 29, 1978, and before Taylor notified Arbogast the next day that the Church had sold the property to someone else.

Hoover further asserts that at a meeting on March 10, 1978, with Arbogast and Taylor, Butz told Arbogast that "he would prefer selling the property [Parcel M-4] to us [Hoover] as the logical developer," that "no other valid offer . . . was being considered for Parcel M-4 than that of Hoover," and that "these other offers . . . were not going to be accepted by the Church, that ours was the only valid offer they were *considering.*" (Italics added.) Hoover tries to torture these statements into a binding promise by the Church to sell Parcel M-4 only to Hoover. The trial court properly refused to make such a strained and improbable inference. (*C. L. Smith Co.* v. *Roger Ducharme, Inc., supra,* 65 Cal.App.3d 735, 742.)

Thus, the documents filed by Hoover opposing the motions for summary judgment completely fail to establish a triable issue of fact with respect to the dispositive issues herein. First, all of the conduct by defendants of which Hoover complains occurred after the five-year covenant not to compete had expired and was not limited by that covenant. Next, the covenant not to take actions which would in any way affect the existence or performance of the option agreement or the participation agreement pertained only to Parcel M-3 and not to Parcel M-4, which at the time Thomson, Spence and Gelker executed the option agreement was not part of the subject matter thereof. Finally, Hoover never had a contract or an option with the Church for the

purchase of Parcel M-4. The Church's oral offer to sell it to Hoover for $110,000 was withdrawn and never accepted. Nor had Hoover, in reliance on the Church's oral offer of March 29, 1979, to keep the offer open until noon of the next day, changed its position to its detriment; hence the doctrine of promissory estoppel does not assist Hoover. Each defendant, therefore, has a complete defense to the complaint. Consequently, issues of fact with respect to other aspects of the case cannot affect its outcome, and the motions for summary judgment were properly granted. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].)

Paragraph 7(e) of the option agreement between Hoover's predecessor in interest on one hand and defendants Gelker, Spence and Thomson on the other provides for an award of reasonable attorneys' fees and costs to the prevailing party in litigation arising under that contract. This is such a case, and Gelker, Spence and Thomson are the prevailing parties. Because such fees and costs are more readily and accurately determinable in the trial court, that court is directed on remand to determine such fees and costs and to award them against appellant Hoover in favor of respondents Gelker, Spence and Thomson.

The judgments are affirmed.

Lillie, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied June 5, 1985, and appellant's petition for review by the Supreme Court was denied August 14, 1985.