Carlton C. COTTON

v.

MAINE EMPLOYMENT SECURITY COMMISSION and Hansen Chrysler Plymouth, Inc.

Supreme Judicial Court of Maine.

Argued May 5, 1981.

Decided July 7, 1981.

Hugh H. Calkins (orally), Dover-Foxcroft, Anthony Asen, Howison, Hayden & Landis, Michael P. Asen, Peter J. Landis, Portland, for plaintiff.

Susan Farnsworth, (orally), Allan A. Toubman, Asst. Attys. Gen., Augusta, for Maine Employment Security Comm.

Henry Steinfeld, Paul Aranson, Portland, for Hansen Plymouth.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Employee Carlton C. Cotton has appealed from a judgment entered in the Superior Court (Cumberland County) sustaining the decision of the Employment Security Commission (Commission) disqualifying him from receiving unemployment benefits from May 20, 1979 until he earned $384.00. The ground of the disqualification was that Cotton had voluntarily "left his employment without good cause attributable to such employment." 26 M.R.S.A. § 1193(1)(A)

At the time of his separation from employment with Hansen Chrysler Plymouth, Inc., Cotton had been working for approximately seven years as a salesman for that concern. It is not in dispute that he was a good salesman.

Cotton testified that at the time of the separation he was "under a lot of mental stress and ... was very depressed" as the result of a number of personal problems unrelated to his employment. His claim is that a series of hostile and inconsiderate actions perpetrated by his employer "compelled" him to leave his employment. Characterizing his employer's conduct as "harrassment", Cotton claims that it gave him "good cause" to terminate his employment. The employer, on the other hand, contests Cotton's characterization of the nature of its conduct towards him and maintains that its actions were responsible and fair in all the circumstances.

Cotton's last day of work was May 23, 1979. He applied for unemployment compensation sometime in November of 1979. The deputy found that Cotton

"left his job when given the choice of liking a decision or leaving. The claimant left regular employment voluntarily without good cause attributable to such employment."

In Cotton's appeal to the Appeal Tribunal, after a hearing during which the hearing officer heard testimony from Cotton and from Alan Nason, Sales Manager and Phillip LaRou, Jr., Treasurer of Hansen Chrysler Plymouth, Inc., the Appeal Tribunal affirmed the deputy's decision. Its conclusion was:

"In view of the testimony obtained at the hearing it is determined that the claimant, unwilling to work on a Saturday as assigned, became upset and as a result left his job. The claimant's testimony revealed that he could have performed the moving on Sunday, rather than Saturday, which indicates that such reason for refusing to work on a Saturday was not a compelling one.

"Therefore, this Tribunal finds the claimant left regular employment voluntarily for personal reasons and without good cause attributable ·to such employment

and without good cause attributable to such employer, within the meaning of Sections 1193–1 and 1221–3 of the Employment Security Law."

Cotton then appealed to the Commission, which decided to grant him a full hearing. After having heard the testimony of Cotton, Nason and LaRou, the Commission found that

"[i]n light of the testimony given at the hearing, it is determined that the claimant, because of the attitude of his supervisor towards him, became upset and left his employment. In the opinion of the Commission, the claimant was not forced to resign but voluntarily left his employment without good cause attributable to such employment."

The Superior Court, as we have already noted, agreed with the Commission.

In his appeal to this Court, Cotton contends that the Commission failed to make adequate findings of fact. He maintains, in addition, that the Commission's determination that he voluntarily left his employment without good cause is not supported by sufficient evidence on the record.

We deny the appeal and affirm the judgment of the Superior Court.

### 1.

We discern no sound basis for Cotton's contention that the Commission failed to make sufficient findings of fact. The standard against which Commission findings are to be judged is, in relevant part, as set forth in 5 M.R.S.A. § 9061:[1]

"Every agency decision made at the conclusion of an adjudicatory proceeding shall be in writing or stated in the record, and shall include findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision."

Cotton argues that this language requires the Commission explicitly to decide whether each of the alleged confrontations occurred and, if such incidents did occur, whether they rose to the level of harassment. We conclude that the statute does not require such detailed incident-by-incident fact-finding. The findings must be sufficient to "apprise the parties . . . of the basis for the decision." 5 M.R.S.A. § 9061. The Commission's decision in this case satisfied the statutory standard. In concluding that Cotton had voluntarily left his employment without good cause, the Commission implicitly determined either that incidents complained of by the employee had not occurred or that if the employment relation had been marked by conflict, such conflict did not provide the employee with good cause to terminate his employment. Thus, read as a whole, the Commission decision contained findings sufficient to reveal the grounds of its decision.

### 2.

We reject Cotton's contention that the evidence is legally insufficient to support the Commission's finding that he left his employment voluntarily without good cause attributable to the employment.

The evidence was conflicting as to the events preceding Cotton's separation from his employment. Cotton himself described a number of incidents that he believed constituted "harassment" by his employer justifying his voluntary termination of employment. Cotton suggested that the harassment began after he challenged management handling of a change in employee medical coverage. He testified that soon after the alleged incident involving medical coverage, he was called into the supervisor's office and told that he was being discharged for poor sales performance. He then pleaded for his job and was placed on a 30 day probation, which had not yet run when Cotton terminated his employment.

On the other hand, the Company's sales manager, Nason, testified that it was a common occurrence that a salesman was given warnings about sales performance. He added that on the occasion in question

---

1. Section 1082(14)(D) of the Employment Security Law, 26 M.R.S.A. § 1041 et seq., expressly makes the provisions of the Maine Administrative Procedure Act, 5 M.R.S.A. § 9051 et seq. applicable to proceedings before the Employment Security Commission.

his discussion with Cotton was focused not on Cotton's sales performance but on his relationships with his fellow employees, and that he warned Cotton about his inequitable treatment of other employees who were exchanging hours with him. Nason, however, had no clear recollection as to whether it was following this discussion that Cotton was placed on probation.

The confrontation immediately preceding Cotton's separation from employment occurred in connection with the death of his father-in-law. When, on Friday, May 18th, Cotton learned of the death, he called several of his fellow employees to arrange for someone to cover his position for several days while he was out of town for the funeral. Apparently unable to find anyone willing or able to undertake these responsibilities, Cotton called Nason. According to Nason, he told Cotton that he would find someone to cover for him but that Cotton would have to make up the time to that individual.

Cotton returned to work after the funeral on Wednesday, May 23, 1979. He testified that he was met at the door by Nason who first demanded to know why he had not returned on Tuesday and then told him that he would have to work the following Saturday, normally his day off, to cover for the person who had worked for him on the Saturday of the funeral. Believing that he was not responsible for making up time taken for a death in the family, Cotton became upset and went to his desk.

Nason's version of the incident was different. According to him, no one was waiting at the door for Cotton, and when he spoke with Cotton it was to offer his condolences and remind Cotton of his Saturday obligation to his fellow employee. Nason testified that Cotton returned to his desk and sulked the rest of the morning, refusing to take his rounds on the floor. At approximately noon, Nason came out of his own office and told Cotton to go home and get himself under control.

Cotton's testimony characterized this last discussion as an abusive confrontation that began when Nason stormed out of his office and, in a loud voice and using obscenity, berated him for his attitude and told him that if he did not like the way he was being treated, he could leave.

Cotton did leave the premises. He returned an hour later, cleaned out his desk, turned in his keys, and according to his testimony, told Nason that he could no longer work under the circumstances as they currently existed. The record contains no evidence that Cotton ever returned to Hansen Chrysler Plymouth, or that either party attempted to resolve the dispute, after May 23, 1979.

█ If the employer's account of the events in question is accepted, the employer may reasonably be taken to have done nothing more than what an employer should do to respond fairly to the concerns and problems of its various individual employees. If, however, Cotton's testimony is credited, the employer is portrayed as engaging in a calculated program of harassment to punish the employee for his opposition to a management position. The Commission's decision makes plain that, after granting the employee an unrestricted opportunity to present his case, the Commission resolved the critical credibility issue in favor of the employer and against Cotton. Since this was uniquely the Commission's province as fact-finder, the Commission's decision cannot be held "clearly erroneous."

The entry shall be:

Appeal denied; judgment affirmed.

All concurring.