DELORES QUINONES, Plaintiff-Appellee, *v.* BOARD OF REVIEW, THE DEPARTMENT OF LABOR, *et al.*, Defendants-Appellants.

First District (5th Division)    No. 80-1916

Opinion filed January 22, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellants.

Steven Saltzman, of Chicago, for appellee.

JUSTICE WILSON delivered the opinion of the court:

Defendants appeal from the trial court's judgment which reversed an administrative decision denying plaintiff's request to antedate her claim for extended Federal unemployment compensation. The broad issue is whether the defendant agency abused its discretion in denying plaintiff's claim. Because we find that the agency did not err, we reverse the trial court.

In January of 1977 plaintiff, Delores Quinones, was laid off from her job. She applied for and received unemployment compensation benefits for the maximum of 26 weeks. After exhausting these State benefits she applied for Federal extended benefits pursuant to the Federal-State Extended Unemployment Compensation Act of 1970, Public Law 91-373, title II (August 10, 1970), amended by the Emergency Unemployment Compensation Act of 1974, Public Law 93-572 (December 31, 1974); see notes following 26 U.S.C.A. §3304, at 351-53 (West 1979). The extended benefit program in Illinois provides that claimants who have exhausted their 26 week maximum of State-funded benefits may apply for an additional 13 weeks of unemployment compensation. These extended benefits are available in two situations: (1) when Federal officials determine that the national rate of unemployment for the preceding 12 weeks has equaled or exceeded 4.5 percent, or (2) when the State rate of unemployment equals or exceeds 5 percent during a 13-week period. (See Ill. Rev. Stat. 1977, ch. 48, par. 409(A)(11).) When either of these situations occur, an "indicator" is turned on and must remain on for 13 consecutive weeks.

When plaintiff applied for extended Federal benefits the indicator was on, but in January 1978, the indicator turned off. Concerned that she had stopped receiving checks, plaintiff returned to her local Division of Unemployment Insurance office (DUI). There, she was told that she would not receive any further benefits. At the time, she had not received the full 13 weeks of extended benefits.

On April 30, 1978, the indicator switched on again. At that time the DUI sent notices to persons it believed were eligible for extended benefits. The DUI determined, however, that claimants who had received some benefits before the indicator went off in January 1978 were ineligible to receive further extended benefits. (DUI Benefit Section Bulletin 1258, Supp. 9 (April 26, 1978).) Consequently, plaintiff and other claimants similarly situated did not receive a letter of notification.

Thereafter, a lawsuit was filed against officials of the Illinois Depart-

ment of Labor. (See *Lackey v. Bowling* (N.D. Ill. 1979), 476 F. Supp. 1111.) The plaintiff class included persons who, like Delores Quinones, did not receive notification in June of their potential eligibility for further benefits. Before a trial was held, however, the parties settled because the United States Department of Labor's Associate Regional Administrator for Unemployment Insurance informed the Illinois defendants that they had interpreted Federal law incorrectly. The Illinois Department of Labor agreed to change its policy, and the parties entered a stipulation to dismiss the lawsuit. In pertinent part, the stipulation provided:

> "Defendants agree that all members of the putative plaintiff class who report to their local office and are determined eligible for extended unemployment insurance benefits and who would have received extended benefits after April 30, 1978, but for the policy and practice challenged in the present case, will receive such extended benefits." *Lackey v. Bowling* (N.D. Ill. 1979), 476 F. Supp. 1111, 1114-15.

Pursuant to this agreement, the DUI sent letters to plaintiff and other members of the *Lackey* class..At the top of the letter, indented and set off from the text, was the caption "Important Notice About Your Unemployment Benefits." The first paragraph of the letter explained that "due to a new federal interpretation of the eligibility criteria for the extended benefits program," the party named therein might be eligible to receive benefits for the weeks following April 30, 1978. It further told claimants to report to their local office on a certain day. Plaintiff's letter, dated June 30, 1978, told her to report on Wednesday, July 12, at 1 p.m. The letter was properly addressed to 2835 W. 23rd Street but was delivered to 2835 W. 23rd Place. Plaintiff did not actually receive the letter until late July or August, after the July 12, 1978, appointment had passed. Moreover, plaintiff did not understand the letter because she is Spanish-speaking and cannot read English. Consequently, plaintiff did not act upon the notice until October 3, 1978, after she had spoken to persons from the Legal Assistance Foundation office on Blue Island Avenue in Chicago. At the DUI office, a claims adjudicator denied her request to antedate her benefits claim to April 30, 1978, the time when the program resumed in Illinois. The denial was based on plaintiff's failure to bring her antedation claim within the scope of DUI Regulation 17F. Plaintiff appealed this decision to a referee and finally to the Board of Review, both of whom affirmed the claims adjudicator's decision. Subsequently, plaintiff appealed to the Circuit Court of Cook County, pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264 through 279). After considering briefs and argument, the trial court reversed the Board's decision. Defendants then brought this appeal from the trial court's judgment.

OPINION

Regulation 17F, which was adopted by the Illinois Department of Labor pursuant to section 700 of the Unemployment Insurance Act (Ill. Rev. Stat. 1977, ch. 48, par. 450), allows a claimant, in certain circumstances, to file a late claim and have it antedated to the proper week. It provides as follows:

> "Regulation 17
> F. Extended Antedation
>   When an individual files a claim or reports with respect to a week not later than one year after the first day of the week, such claim may be antedated to the first day of the week, or the individual may be deemed to have reported on his report day for the week, as the case may be, in any instance in which failure to file or report at an earlier time is established by the individual to be due to
>   1. The individual's unawareness of his rights under the Act, or
>   2. Failure either of the employing unit or of the Division of Unemployment Insurance to discharge its responsibilities or obligations under the Act or the Regulations, or
>   3. Any act of an employing unit in coercing, warning, or instructing the individual not to pursue his benefit rights, or
>   4. Circumstances beyond the individual's control, provided that the individual files his claim or reports, as the case may be, either at his first available opportunity after the reason for failure to file or report no longer exists, or not more than fourteen days after the date of such first available opportunity." Rules and Regulations, Illinois Unemployment Insurance Act, Department of Labor, Bureau of Employment Security, effective September 22, 1977.

Defendants argue that plaintiff was properly denied antedation of her claim because her failure to file the claim did not fall within any of the four categories of Regulation 17F. Further, they contend that she failed to file her claim within the 14-day time period after the date of her "first available opportunity" to file. Plaintiff responds that her claim for extended benefits should have been antedated because the DUI did not properly discharge its obligations to her and because the *Lackey* stipulation mandates that the DUI grant benefits to claimants in plaintiff's position. Moreover, she maintains that defendants are estopped from denying plaintiff's claim as being untimely filed because of defendant's initial erroneous application of the law and their resultant stipulation with the *Lackey* plaintiffs.

I

■■ Initially, we can dispose of the estoppel argument by noting that

plaintiff never raised it during the proceedings below. Consequently, plaintiff cannot raise the argument for the first time on appeal. (*Cornell v. County of Du Page* (1977), 58 Ill. App. 3d 230, 374 N.E.2d 1.) Nor do we believe that the estoppel doctrine should be applied to the circumstances of this case. There is nothing to indicate that defendants acted in bad faith or negligently gave plaintiff erroneous information. At the time the indicator turned off and her extended benefits ceased (in January 1978) plaintiff went to the DUI office and was informed that she would receive no further benefits. When the program resumed in April, she did not receive notice because at that time the DUI's interpretation of the law was that she and others like her were ineligible for more benefits. That the *Lackey* stipulation changed this policy, moreover, does not establish that she was misled in January. Furthermore, we believe that the agency acted reasonably and fulfilled its obligation to potential benefit recipients by sending notice letters to the *Lackey* plaintiffs. Accordingly, defendants are not estopped from challenging her right to antedate her claim.

## II

Although defendants initially maintain that plaintiff's failure to timely file her claim does not fit within one of the four "excuse" or "good cause" categories of Regulation 17F, we need not discuss the merits of this argument at length. We are assuming, for the purposes of this appeal, that the circumstances leading to the *Lackey* stipulation constitute plaintiff's initial reason for failing to apply for extended benefits after the indicator turned on again in April of 1978; she had not been notified at that time of her potential eligibility for more benefits because of the prevailing DUI policy at the time. Therefore, the dispositive question of this appeal is whether, having met the threshold "good cause" requirement of the regulation, plaintiff acted within the time period prescribed therein. Simply stated, when did she receive the notice that triggered her duty to file? This issue centers on the application of the 14-day period included in Regulation 17F, which allows antedation "provided that the individual files his claim or reports * * * either at his first available opportunity, or not more than fourteen days after the date of such first available opportunity." Plaintiff's right to antedate her claim thus depends on the determination of when her first available opportunity to file arose. As the facts indicate, in June, plaintiff was sent a letter pursuant to the *Lackey* stipulation which contained notice of her potential eligibility for further extended benefits. She testified, however, that since it was misdelivered, she did not actually receive it until the end of July or early August. At that time, of course, her July 12, 1978, appointment had expired. Furthermore, when she did receive it, she did nothing for awhile because she did not understand English. Finally, in early October, she went to the local DUI

office, after the letter had been explained to her by persons from the Legal Assistance Foundation in Chicago. If her actual receipt of the letter in August constitutes plaintiff's "first available opportunity after the reason for failure to file * * * no longer exists," she does not meet the requirements of the regulation because she did not file until October 3, 1978. If, however, the date of her actual comprehension or interpretation of the letter marks the running of the 14-day period, she presumably would satisfy the regulation because the record indicates that she learned of the letter's contents on about September 30, 1978. The trial judge reversed the agency's denial of plaintiff's claim because although he expressly noted his agreement with the Board's decision, he believed that on the basis of the case law, plaintiff was "entitled to more [benefits] than she received, assuming, as she says, she can only communicate in the Spanish language." It is evident that the basis of the court's reversal was the language barrier. Without doubt, had plaintiff understood English, the efficacy of the notice letter would not now be in question; she would have been under a duty to file her claim after receiving the letter, within the two week provision of Regulation 17F. The narrow legal question before us, therefore, is whether her inability to understand English excused her late filing. We believe that the Illinois Supreme Court has answered this question in the negative.

In *Hernandez v. Department of Labor* (1981), 83 Ill. 2d 512, 416 N.E.2d 263, the Spanish-speaking plaintiff filed for unemployment compensation benefits. The claim was denied, and plaintiff was sent a letter notifying him of the decision and of his attendant right to appeal within nine days. Because he did not speak English, he took the letter to a friend, who mistranslated it. Subsequently, plaintiff went to the local office, had the letter translated correctly, and filed an appeal that day. The appeal was denied, however, because plaintiff had missed the nine-day time period for filing. On a subsequent appeal to the circuit court, pursuant to the Administrative Review Act, the agency's determination was affirmed. The appellate court reversed, however, on the basis that plaintiff had not received *actual* notice of the administrative decision. (*Hernandez v. Board of Review* (1979), 79 Ill. App. 3d 635, 639, 398 N.E.2d 879, 882-83.) Finally, the supreme court reversed the appellate court, holding that receipt of the letter constituted effective notice to plaintiff, notwithstanding the language problem. The court first held that the statutorily prescribed nine-day period for filing an appeal operated as a mandatory limitation on the right of appeal. Relying on a Massachusetts decision, the supreme court reasoned that to hold in favor of plaintiff would be to allow all non-English speaking persons or illiterates to assert that notices written in English were legally insufficient. Moreover, the court refused to engraft a good cause exception to the nine-day period, noting that even

if the statutory provision contained a good cause exception, "[i]t is by no means certain * * * that one who receives an erroneous notice translation would be allowed to file late under [such a] provision." 83 Ill. 2d 512, 519, 216 N.E.2d 263, 266.

■■ In the pending case, the 14-day period of Regulation 17F also appears to operate as a mandatory limitation on the ability to antedate a claim for benefits. The regulation is itself a good-cause exception to the general requirement that claimants must file for benefits on time. (See Ill. Rev. Stat. 1977, ch. 48, par. 420(B).) Within the one-year "grace" period of Regulation 17F, as long as the claimant's reason for late filing fits one of the four "good cause" categories, he has as much as 14 days following his "first available opportunity" to file for antedation of his claim. If the regulation is to function with any degree of certainty, this time period must be construed as a mandatory limitation on a party's entitlement to have a claim antedated.

■■ We also reject plaintiff's argument that the *Lackey* stipulation supersedes Regulation 17F because the stipulation contains no time restraints but simply provides that all members of the plaintiff class may report to their local offices for a determination of their eligibility for benefits under the corrected policy guidelines. We do not agree that the stipulation obviates the terms of Regulation 17F. Indeed, it seems more logical to reconcile the stipulation with the regulation in the following manner. (1) The circumstances that led to the *Lackey* litigation constitute the reason for plaintiff's failure to file her claim initially (because she had no clear right to receive further benefits until the *Lackey* settlement established that right). (2) The letter notifying plaintiff of her possible eligibility for further benefits, sent pursuant to the *Lackey* stipulation, constitutes effective notice, under the reasoning of *Hernandez*. (3) Because she admittedly received the letter in late July or early August, her first opportunity to file for antedation benefits would be sometime in August. Even considering the 14-day extension, she did not file on time because it was not until October 3, 1978, that she went to the DUI office. Accordingly, she failed to meet the requirements of Regulation 17F.

We are aware that the result in this case, as in *Hernandez*, appears harsh; however, an effective unemployment compensation system requires a measure of certainty in the application of its rules and regulations. We conclude that the Board of Review of the Department of Labor did not err in denying plaintiff's antedation request. Accordingly, we must reverse the judgment of the trial court.

Reversed.

SULLIVAN, P. J., and MEJDA, J., concur.