Larry W. McKENZIE

v.

MAINE EMPLOYMENT SECURITY COMMISSION.

Supreme Judicial Court of Maine.

Argued Sept. 17, 1982.

Decided Dec. 8, 1982.

Kettle, Carter, Hannigan & Vickerson, Edward W. Klein (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., Peter Brann (orally), Susan P. Herman, Asst. Attys. Gen., Augusta, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The specific problem which this case presents is, whether an applicant for unemployment compensation who was erroneously declared ineligible to receive any benefits on the ground of insufficient wage credits should be awarded those benefits retroactively after the mistake is discovered, even though he failed in the interim to appeal the initial determination of ineligibility and to file weekly claims as required by statute (26 M.R.S.A. §§ 1192 and 1194). Following

timely appeals from the denial of retroactive benefits within agency structured procedures, McKenzie's seasonable petition, filed in Superior Court, Cumberland County, for judicial review of the unfavorable decision of the Maine Employment Security Commission (Commission or MESC) pursuant to 5 M.R.S.A. §§ 11001–11007 and M.R. Civ.P. 80B, caused the court to find error on the part of the Commission "by not allowing plaintiff's claim [for retroactive benefits] for the weeks in question." The case was remanded for further proceedings consistent with its opinion, the court ruling that it "would be hard pressed to penalize plaintiff for his good faith reliance on the Commission's determination" that claimant was ineligible for compensation benefits due to insufficient wage credits. We reverse the judgment of the Superior Court, remanding the case for entry of judgment affirming the decision of the Maine Employment Security Commission.

■ The facts in this case are not in dispute; under such circumstances, the question at issue is purely one of law. *Paige v. Maine Employment Security Commission,* 391 A.2d 321, 324 (Me.1978). We must then review the Commission's decision to determine whether, given those undisputed facts, it has correctly applied the applicable law. *See Tobin v. Maine Employment Security Commission,* 420 A.2d 222, 225 (Me.1980).

On March 31, 1981, Larry McKenzie filed for unemployment compensation benefits with the Commission. He reported his income for the preceding year and a half; he disclosed wages earned during the third calendar quarter of 1980 and mentioned receiving workers' compensation payments during the fourth quarter of 1980, but there is no evidence in this record that any particular amount of compensation payments was stated. The following week, McKenzie returned to the local MESC office to make his claim for benefits for the week ending April 4, 1981, pursuant to 26 M.R.S.A.

§ 1192(1), which provides that an unemployed individual

shall be eligible to receive benefits with respect to any week *only if:*

1. [h]e has made a claim for benefits with respect to such week or part thereof in accordance with such regulations as the commission may prescribe; [1]  ...

(Emphasis ours)

Section 1192 further provides that an unemployed individual is eligible to receive unemployment compensation benefits only if he has been paid certain minimum wages "in each of 2 different [calendar] quarters in his base period." 26 M.R.S.A. § 1192(5). Also, workers' compensation payments are considered "wages" for the purpose of this section of the Act. *Id.* McKenzie's base period was from September 1, 1979 through December 31, 1980. *See* 26 M.R.S.A. § 1043(3). His earned wages together with the workers' compensation payments he had received factually qualified him for benefits under the "base wages" requirement of Section 1192(5). However, on April 9, 1981, *i.e.* 10 days after the Maine Employment Security Commission had requested a report from the Workers' Compensation Commission and/or the insurance carrier on the amount of workers' compensation benefits received by McKenzie during his base period, but had not been forwarded the desired information, the Commission, pursuant to 26 M.R.S.A. § 1194(2), mailed McKenzie a computer-generated notice stating that he was ineligible for unemployment compensation benefits "due to insufficient wage credits." The computer form, which purported to list all of McKenzie's "base period wages by quarter," showed the amount of his earned wages as he had reported them to the Commission representative, but did not list the workers' compensation payments he had received. On the back of this form, there appeared, *inter alia:*

If you believe the information contained in this determination is incorrect, you should contact the local office for

---

1. MESC Rules, ch. 3–1(F), (I) and (L) (1981), require the applicant to report weekly on an assigned day to a commission representative in

order to maintain eligibility for unemployment benefits with respect to each particular week.

review. After review, if you still think the determination is incorrect, you may file an appeal ... If you appeal, you should continue to file claims as long as you are unemployed.

McKenzie did not request a review; he did not appeal and did not continue to file weekly claims.

The information respecting McKenzie's workers' compensation payments reached MESC after April 22, 1981. The Commission, then, on its own initiative made a redetermination of McKenzie's eligibility status on April 27, 1981, and mailed him a second computer-form notice, this one stating that he was eligible for unemployment compensation benefits after all. Listed thereon were both his earned wages and his workers' compensation payments received as "base period wages." Forwarded to McKenzie with the notice was a check in the amount of $74, the benefits due him on the only claim filed through that date, which was for the week ending April 4, 1981. Notwithstanding the Commission's redetermination, McKenzie failed to file weekly claims until May 28, 1981, when he "reopened" his claim with the Commission and requested retroactive payments for the seven previous weeks in which he had failed to report and file.

Before tackling the critical problem involved in this case, we must have in mind certain governing precepts which come into play in this situation. First, generally speaking, the burden of persuasion on issues affecting eligibility for unemployment compensation benefits is on the claimant. *Smith v. Director of the Division of Employment Security,* —— Mass. ——, 429 N.E.2d 700, 702 (1981); *Thomas v. Rutledge,* 280 S.E.2d 123, 130 (W.Va.1981); *Duenas-Rodriguez v. Industrial Commission,* 606 P.2d 437, 438 (Colo.1980); *Eichman v. Com., Unemployment Compensation Board,* 49 Pa.Cmwlth. 21, 409 A.2d 1389, 1391 (1980); *Patrick v. Board of Review,* 171 N.J.Super. 424, 409 A.2d 819, 820 (1979). *But see Tobin v. Maine Employment Security Commission,* 420 A.2d 222, 225–26 (Me. 1980). A claimant must establish eligibility

for each week for which benefits are claimed. *Luskin v. Department of Employment,* 100 Idaho 584, 602 P.2d 947, 949 (1979). Second, even though our Maine Employment Security Law, designed to relieve the stress of economic insecurity due to unemployment, has been viewed by this Court as remedial legislation mandating a liberal construction in favor of the claimant to afford all the relief the Legislature intended to provide, nevertheless, courts are not at liberty to read into the Act provisions which the Legislature did not incorporate therein, nor may they enlarge the scope of the statute, under the guise of construing the legislation. *Toothaker v. Maine Employment Security Commission,* 217 A.2d 203, 210 (Me.1966); *Red Bird v. Meierhenry,* 314 N.W.2d 95, 96 (S.D.1982). It follows that the administrative authorities, as well as the courts themselves, have no inherent power to extend or ignore statutory appeal periods in the absence of delegated statutory authority to do so. *See Whitchurch v. Department of Employment Security,* 139 Vt. 566, 433 A.2d 284, 286 (1981). The specific periods of appeal statutorily affixed to the several steps in the chain of administrative review are jurisdictional and mandatory. *Elliott v. Department of Employment Security,* 137 Vt. 536, 537, 409 A.2d 563, 564 (1979); *Fouste v. Department of Employment,* 97 Idaho 162, 540 P.2d 1341, 1347 (1975); *Kitchell v. Unemployment Compensation Board of Review,* 9 Pa.Cmwlth. 149, 305 A.2d 728, 729 (1973); *McCoy v. Bureau of Unemployment Compensation,* 81 Ohio App. 158, 77 N.E.2d 76, 78 (1947). *See also Rice v. Amerling,* 433 A.2d 388 (Me.1981); *Coates v. Maine Employment Security Commission,* 428 A.2d 423, 427 (Me.1981); *Brown v. State, Dept. of Manpower Affairs,* 426 A.2d 880, 888 (Me.1981). The claimant of unemployment compensation benefits must be held to have knowledge of the requirements of the Act and legally adopted regulations of the Commission and must suffer such loss as may have arisen from his failure to comply with the plain mandatory terms of the statutory program. *See Beckwith v. School Administrative District No. 2,* 243 A.2d 62, 63 (Me. 1968).

McKenzie puts forth a two-part argument to support his claim of entitlement to retroactive unemployment compensation benefits. First, he asserts that the Commission overstepped its statutory authority in making its initial determination of ineligibility before it was given the monetary information about the workers' compensation payments received by the claimant and requested of the Workers' Compensation Commission. We disagree. The Employment Security Law, as enacted by our Legislature in coordination with the nationwide unemployment compensation insurance system devised by the Congress of the United States, anchors its primary objective of providing a substitute for wages lost during a period of unemployment to the unemployed worker, his family and the entire community (26 M.R.S.A. § 1042) upon "promptness" in the initial determination of eligibility status, "promptness" in paying compensation to the unemployed worker after an initial determination of eligibility, and "promptness" in the administrative review process providing opportunity for consideration and correction of errors made in initial eligibility determinations. Rapidity in the administration of the entire process is an essential feature of the program. *See California Department of Human Resources Development v. Java,* 402 U.S. 121, 131–133, 91 S.Ct. 1347, 1354–55, 28 L.Ed.2d 666 (1971); *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975); *Los Angeles Unified School District v. Livingston,* 125 Cal.App.3d 942, 178 Cal.Rptr. 680, 682 (1982).

In section 1194(2) of the Act, it is provided *inter alia* that

[a] representative ... referred to as a deputy, shall *promptly* examine the first claim filed by a claimant in each benefit year and shall determine the weekly benefit amount and maximum benefit amount potentially payable to the claimant during such benefit year ...

The deputy shall *promptly* examine all subsequent claims filed and, on the basis of the facts found by him, shall determine whether or not such claim is valid ...

The deputy shall *promptly* notify the claimant and other interested party of the determinations and reasons therefore [sic]. ...

Subject to subsection 11 [quoted at the end] unless the claimant or any such interested party, within 15 calendar days after such notification was mailed to his last known address, files an appeal from such determination, such determination shall be final ...

If an employer's separation report for an employee is not received by the office specified thereon within 10 days after such report was requested, the claim shall be adjudicated on the basis of information at hand.

[Subsection 11. *Prompt payment of claims.*]

A. Benefits shall be paid *promptly* in accordance with a determination, reconsidered determination, redetermination, decision of an appeal tribunal, the commission or a reviewing court under this section upon the issuance of such determination, reconsidered determination, redetermination or decision, regardless of the pendency of the period to apply for reconsideration, file an appeal or petition for judicial review .... (Emphasis provided)

Thus, the Commission, in making its determination of eligibility status on April 9, 1981, at the expiration of 10 days following its requested report respecting McKenzie's receipt of compensation payments from the Workers' Compensation Commission, was merely complying with the express statutory mandate that

[i]f an employer's separation report [or other report as in this case of workers' compensation payments received] for an employee is not received by the office specified thereon within 10 days after such report was requested, *the claim shall be adjudicated on the basis of information at hand.* (Emphasis supplied)

Hence, the Commission was not exceeding its statutory authority by making a claimed premature status determination, but rather, was in strict compliance with an explicit

statutory mandate. The risk to the claimant of an early erroneous initial determination of status, as happened in the instant case, remains within the claimant's control for agency correction or modification by reason of the express statutory safeguards designed to protect the claimant's rights. Indeed, the claimant must be notified promptly of the deputy's determinations and the notice must give *reasons* for the particular determination. Furthermore, the notice advises the claimant as to what steps he should take, if he disagrees with the adjudication.[2] As noted previously, this notice was mailed to McKenzie on April 9, 1981; a quick glance at the notice reveals instantly that McKenzie was being declared ineligible for benefits *due to insufficient wage credits;* this reference to wage credits necessarily should have directed McKenzie's attention to the listed *base period wages by quarter* which appeared immediately thereafter and which disclosed only his earned wages from a former employer, George Townsend, for the September 1980 quarter, but omitted any reference to workers' compensation payments received in the December 1980 quarter. Presuming he knew that workers' compensation payments were considered wages for insured work in determining his qualification for benefits, McKenzie should have readily concluded that there must be error in the Commission's determination. Yet, he failed to contact the local office for review; he failed to file an appeal; and he failed to report weekly for further benefits for the stated reason that "there was no sense in appealing" or "wasting money for gas back and forth to sign up," because "they said that I had insufficient funds."

We must emphasize that the initial determination made on April 9, 1981 of McKenzie's ineligibility was legally correct on the basis of the information at hand.[3] The notice given McKenzie was accurate and adequate, and on its face should have alerted any reasonable claimant aware of his situation of the probability of error in the adjudication. Blind reliance on the agency's determination on the subjective premise that he figured the Commission

---

2. The form notice given McKenzie with the initial determination of ineligibility read in full as follows:

THIS IS A MONETARY DETERMINATION ONLY. This form shows the amount of benefits to which you will be entitled if you meet all other eligibility requirements.

If this determination shows you did not have sufficient wages in the base period to qualify for unemployment benefits, you may file for a new determination the following quarter.

Your weekly benefit amount (WBA) is based on wages paid in the high quarter of your base period. Your maximum benefits available (MBA) is the lesser of 26 times your weekly benefit amount, or 1/3 of wages paid in your base period.

If you believe the information contained in this determination is incorrect, you should contact the local office for review. After review, if you still think the determination is incorrect you may file an appeal. *AN APPEAL MUST BE FILED WITHIN 15 DAYS OF THE DATE THIS DETERMINATION WAS MAILED* (See Date Mailed on other side). If you cannot contact the local office in person, you may write stating you wish to appeal the determination. *AN APPEAL FILED BY MAIL MUST BE POSTMARKED WITHIN 15 DAYS OF THE DATE THIS DETERMINATION IS MAILED.* The Commission cannot act on an appeal received after the prescribed 15 day period.

If you appeal, you should continue to file claims as long as you continue to be unemployed.

NOTE: The Commission has the authority to correct this determination if there is an error in the weekly benefit amount (WBA); the maximum benefits available (MBA), the amount of wages reported; or if there is an error in identity or computation. This redetermination must be made within one year of the date of the original determination.

3. We recognize that an eligibility determination made so early, as required by MESC Rules, ch. 2.7(E) (1981), may cause some hardship to applicants like McKenzie who would not be eligible under the "base wages" requirement *but for* their receipt of workers' compensation benefits during their base period. The hardship stems from the fact that, while employers are required by regulation to provide the Commission with confirmation of the claimant's reported wages within the 10 day limit, no parallel provision guarantees that insurance companies will respond equally promptly respecting payment of workers' compensation benefits. The Legislature's express goal of expeditious determinations of claims and immediate payment of benefits when found due would suggest corrective legislation, which is not the prerogative of the judiciary to provide.

was right and that he thought he had no grounds to appeal, will not excuse failure on the part of a claimant to comply with the statutory prerequisites of timely requests for review or redetermination, or for seasonable appeals. *See Cameron v. Com., Unemployment Compensation Board of Review,* 59 Pa.Cmwlth. 567, 430 A.2d 396, 398 (1981). The referee is not required to advise a claimant on evidentiary matters or on specific points of the law which govern the dispensation of unemployment compensation benefits. *Snow v. Com., Unemployment Compensation Board of Review,* 61 Pa.Cmwlth. 396, 433 A.2d 922, 926 (1981).

■ Furthermore, nothing in the Commission's initial determination, nor in its notice to McKenzie, apart from the stated reasons for denying benefits, could reasonably be construed as an inducement to the claimant not to take timely redress action by way of request for review or an appeal. The evidence in this record was insufficient to show any wrongful conduct on the part of the administrative authorities which could legally sustain a claim of equitable estoppel which, it seems, the Superior Court applied in the instant case. *Cf. Townsend v. Appel,* 446 A.2d 1132 (Me.1982).

■ McKenzie's second argument asserts that an applicant should not be held to the requirement of Section 1192(1)—that he file a weekly claim for each week of unemployment—where he has been mistakenly classified as "ineligible due to insufficient wage credits" through no fault of his own. This argument, though it might be persuasive if addressed to the Legislature, finds no support in existing law. The Employment Security Law clearly states that in order to be eligible for unemployment benefits "with respect to any week," an applicant must not only have earned sufficient base wages before his unemployment commenced (McKenzie admittedly satisfied this condition), but must also have "made a claim for benefits with respect to such week . . . in accordance with such regulations as the Commission may prescribe." 26 M.R. S.A. § 1192(1). These are only two requirements among numerous eligibility conditions set forth in Section 1192, and they are essentially of equal weight. There is no provision in the statute or the Commission's regulations excusing an applicant from the duty to report each week, except that a claimant who has "good cause for his failure to make his claim" on time and who files not more than seven days late will be allowed benefits "if otherwise eligible." MESC Rules, ch. 3.1(L)(2) (1981). This exception does not help McKenzie, who failed to file weekly claims not only during the time between the Commission's original determination of his ineligibility and its subsequent reversal or redetermination, but also for over a month after he learned that he was eligible after all.

■ Nor, do the principles of due process, "another name for governmental fair play" (*In re: John M. Stanley,* 133 Me. 91, 95, 174 A. 93, 95 (1934), *aff'd sub. nom., Stanley v. Public Utilities Commission of Maine,* 295 U.S. 76, 55 S.Ct. 628, 79 L.Ed. 1311 (1935)), require that an exception to the weekly filing rule be made for McKenzie. The first computer form he received instructed him to appeal and to continue filing weekly claims if he had any reason to believe that the information it contained was incorrect. Although McKenzie could see that no workers' compensation payments were listed as part of the "base period wages" appearing on the front of the notice-form, he chose not to challenge the determination. The Commission made a redetermination on its own initiative pursuant to section 1194(2), after it received information respecting the fact and amount of McKenzie's workers' compensation payments. But his failure to comply with section 1192(1), the weekly claim requirement, even though in good faith, could not be remedied by Commission action, absent specific statutory authority to do so.

■ McKenzie had ample and adequate notice of his duty to appeal and to continue making weekly claims if he wished to challenge the finding of ineligibility indicated on the first written notice-communication he received from the Commission. Where he was apprised sufficiently of the basis for

the Commission decision and the notice itself on its face, absent any report of workers' compensation payments received as base wages, readily revealed a possible, if not probable, erroneous adjudication, McKenzie had the duty fairly imposed on him by the statute to take the minimal step of contacting the local office for review and filing weekly claims until personally satisfied that no Commission error was involved. The statute does not require any more detailed reason than given in the instant case on the ground of due process. *See Cotton v. Maine Employment Security Commission,* 431 A.2d 637 (Me.1981); *Adams v. Harris,* 643 F.2d 995 (4th Cir.1981).

Something more than mere hardship in the loss of unemployment compensation benefits resulting from non-compliance with statutory prerequisites of weekly reporting and timely appeals is necessary to justify any application of equitable principles of estoppel to which the Superior Court resorted in this case. *See Kitchell v. Unemployment Compensation Board of Review,* 9 Pa.Cmwlth. 149, 305 A.2d 728, 729 (1973); *Quinones v. Board of Review,* 59 Ill.Dec. 950, 104 Ill.App.3d 227, 432 N.E.2d 894, 899 (1982).

█ Also, no due process argument respecting the alleged inadequacy of the notice of ineligibility for benefits on account of the broad scope of the reason given for the denial of relief was made before the administrative authorities. Failing development of the issue at the agency level, McKenzie cannot raise such contention for the first time at the judicial stage of the appeal process. *Frost v. Review Board of Indiana Employment Security Division,* 432 N.E.2d 459 (Ind.App.1982); *Nytiaha v. Com., Unemployment Compensation Board,* 56 Pa.Cmwlth. 564, 425 A.2d 485 (1981); *Cleveland v. Department of Employment Security,* 414 A.2d 1157 (Vt.1980); *Sparks v. Caldwell,* 244 Ga. 530, 261 S.E.2d 590 (1979); *Fong v. Jerome School District No. 261,* 101 Idaho 219, 611 P.2d 1004 (1979).

On this record, the Commission was correct in denying McKenzie retroactive benefits for the weeks in which he failed to file weekly claims.

The entry will be:

Judgment of the Superior Court reversed. Case is remanded to the Superior Court for entry of judgment affirming the decision of the Maine Employment Security Commission.

All concurring.